IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 11, 2001

## STATE OF TENNESSEE v. WILLIAM M. FAHR

**Direct Appeal from the Criminal Court for Shelby County**
**No. 98-03767      Joseph B. Brown, Jr., Judge**

_____

### No. W2000-00973-CCA-R3-CD  - Filed May 9, 2001

_____

Defendant was indicted by a Shelby County grand jury on the charge of rape of a child.  Pursuant to a negotiated plea agreement, defendant entered a plea of *nolo contendere* to sexual battery and received a two-year sentence.  The issue of how his sentence should be served was submitted to the trial court.  Upon our review of the record, we conclude that it is necessary to remand for a new sentencing hearing since the trial court relied upon the defendant's failure to make a public confession at a church in determining the sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed; Remanded for New Sentencing Hearing**

JOE G. RILEY, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

N. Craig Brigtsen, III and Terry D. Smart, Memphis, Tennessee, for the appellant, William M. Fahr.

Paul G. Summers, Attorney General and Reporter; Laura E. McMullen, Assistant Attorney General; William L. Gibbons, District Attorney General; Patience R. Branham and Daniel R. Woody, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

Pursuant to a negotiated plea agreement, the defendant pled *nolo contendere* to sexual battery, a Class E felony, and received a two-year sentence.  The manner of service for defendant's sentence was left to the discretion of the trial court.  The defendant sought a suspended sentence, which was denied.  We conclude the trial court failed to follow the guidelines and principles of sentencing.   In light of the record before this court, the only feasible remedy is a remand for a new sentencing hearing.

## PROCEDURAL BACKGROUND

On the night of June 29, 1997, the defendant, his girlfriend, and his girlfriend's eleven-year-old daughter, the victim, were lying on the bed in defendant's bedroom watching television. From this point, the facts are disputed. It is the state's contention that the defendant digitally penetrated the victim; the defendant denies sexual penetration but admits to improper sexual contact. The transcript of the *nolo contendere* plea is not in the record.[1] Further factual recitations are unnecessary for the disposition of this appeal.

On July 30, 1999, the defendant entered a plea of *nolo contendere* to the offense of sexual battery with an agreed two-year sentence, and the manner of service was to be determined by the trial court. Sentencing hearings were conducted on March 17 and 28, 2000.[2] Ultimately, the trial court denied alternative sentencing but ordered defendant released from the county workhouse "every Tuesday at 10:00 a.m. and to return at 10:00 p.m. each Tuesday to attend counseling at U.T. Medical Group." The trial court's route to the final sentencing determination took some unusual turns.

At the first sentencing hearing, the defendant testified that he had been attending therapy for sexual abuse offenders during the past six months. He further stated that he knew his actions were wrong and stated he was very remorseful and ashamed. However, the trial court was not satisfied with the defendant's level of candor and said, "If you want some relief, you're going to fess on up." The trial judge stated that, if the defendant would be willing to tape himself confessing before the entire congregation at a specified church during the 11:00 a.m. Sunday morning service, he "may give [the defendant] some relief from the amount of jail time that I was about to give you." The defendant agreed to the trial court's condition, and the trial court set a future hearing date to determine if the defendant had adequately complied with the court's terms.

At the second hearing, defense counsel informed the court that neither the specified church nor another church that had been contacted would allow the public confession. Counsel then either handed to the trial court, or attempted to hand to the trial court, letters from the two churches indicating their refusal to allow the public confessions.[3] The trial judge stated he wanted more than a "genuine effort," but instead wanted to "embarrass him so bad." The trial judge described the

---

[1] Ordinarily, the absence of the plea transcript makes it impossible for this court to adequately review a sentencing determination, and the ruling of the trial court is presumed correct. State v. Keen, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999). However, due to the comments of the trial court at the two sentencing hearings, it is apparent that a new sentencing hearing must be conducted.

[2] The record does not reveal the reason for the lengthy delay between entry of the plea and sentencing.

[3] It is unclear from the transcript whether the letters were actually handed to the trial court. The transcript reflects that counsel stated "I'll pass forward . . .," but at this point the trial court interrupted and said "Oh, how convenient, so he doesn't have to get up and admit his shame for doing what he did to that young woman." The letters are not in the record. We would also observe that it is certainly understandable that church officials might feel uncomfortable with a court-imposed requirement that a defendant publicly confess at the morning worship service improper sexual contact with an eleven-year-old female.

defendant as having a "conference with the hierarchy there and another church but he didn't do anything about going out and confessing in front of anyone."

After referring to the "defense" as "so bloody disgusting," the trial court heard testimony from the victim's mother. She stated that the victim still suffered emotional distress due to the defendant's actions. The court asked her if she wished to see the defendant serve his sentence in confinement, and she responded affirmatively.[4]

Upon the conclusion of the mother's testimony, the trial court ruled that the defendant should serve his two-year sentence in confinement with a provision allowing for a weekly release on Tuesdays at 10:00 a.m. until 10:00 p.m so the defendant could continue rehabilitative therapy. *See* Tenn. Code Ann. § 40-35-316(A).

The trial judge then addressed the defendant:

Stand up - - I'm talking about you. You low down scoundrel you. This is called allocution, it's the denunciation by the Court of the defendant to express the community sense of outrage at your behavior.[5] And you wheedled out of this last opportunity I gave you because you're trying to maintain this pristine appearance, this facade of being an upstanding man. You are a slime ball and a worm for what you did.

The trial judge later explained that his suggestion of a public confession in a church service was "not [an attempt] to mingle church and state," but rather an "opportunity for [the defendant] to have some repentance/ personal rehabilitation/ sanction for what he did."

## ANALYSIS

The defendant contends the trial court erred in failing to consider the sentencing principles and all relevant facts and circumstances in determining the manner of service of his sentence. He argues that since he was convicted of a Class E felony and sentenced to less than eight years, he is presumably a favorable candidate for probation.

---

[4] The trial court also asked the mother some very personal questions about her former relationship with the defendant.

[5] Allocution has been defined as the formality of the court's inquiry of a convicted defendant as to whether the defendant has any legal cause to show why judgment should not be pronounced. **Black's Law Dictionary** 76 (6th ed. 1990). It is the right of the defendant to address the court, not a right of the court to express community outrage. *See* State v. Stephenson, 878 S.W.2d 530, 550 (Tenn. 1994).

## A. Forced Public Disclosure

While Tennessee has refrained from holding that public disclosure of convictions is *per se* unduly repressive or restrictive, the Tennessee Supreme Court has condemned a probation condition that requires a sexual offender to erect a sign in his yard identifying him as a child molester. *See* State v. Burdin, 924 S.W.2d 82, 87 (Tenn. 1996).

> Though innovative techniques of probation are encouraged to promote rehabilitation of offenders and the prevention of recidivism, this legislative grant of authority may not be used to usurp the legislative role of defining the nature of punishment which may be imposed. The power to define what shall constitute a criminal offense and to assess punishment for a particular crime is vested in the legislature.

*Id.* (citations omitted).

## B. Our Determination

Like the court in Burdin, we conclude that making a less harsh sentence conditional upon a defendant's publicly confessing in a church that he had improper sexual contact with an eleven-year-old female is not expressly or implicitly authorized by the Sentencing Act. Moreover, even if it were a valid sentencing option, the undisputed evidence reflects that the defendant attempted to comply with the condition and, through no fault of his own, was unable to do so.

The state argues that, regardless of the trial court's statement that it would consider a less harsh sentence if the defendant made a public confession in church, the trial court properly considered the principles of sentencing in denying the defendant's request for probation. The state insists that the trial court did not base its decision upon the defendant's failure to issue a public confession, but rather upon the defendant's lack of candor, his failure to take responsibility and the seriousness of the offense. The state contends that the purpose of the church confession was to determine if the defendant would, in fact, be candid about his actions.

While we do not necessarily disagree with the state's assertion that the trial court may have considered other legitimate sentencing factors in denying the defendant's request for probation, we can only conclude the defendant's failure or inability to make the public church confession resulted in a harsher sentence. In setting this condition the trial court stated that if the defendant wanted relief, he was going to have to "fess up." When defense counsel insisted that the defendant had made a genuine effort to comply with the court's desires, the trial court responded, "I don't want a genuine effort, I want to embarrass him so bad. Mr. Hypocrite over there . . . [s]ee if he can come up with something. I want him embarrassed." Even after announcing the denial of probation, the trial court stated the defendant "had wheedled out of this last opportunity," which was an "opportunity for him to have some repentance/personal rehabilitation/sanction for what he did." Thus, the record clearly reflects the trial court's reliance upon the failure to make a public church confession in determining the sentence.

We conclude that the only feasible remedy under these circumstances is to remand for a new sentencing hearing. In doing so, we are mindful of, and agree with, the victim's mother's concerns which were expressed at the hearing over the delay between commission of the offense and judicial resolution. In light of the record before this court, however, we simply see no alternative to a remand for a new sentencing hearing.

## CONCLUSION

Based upon our examination of the record, we remand to the trial court for another sentencing hearing.

_____
JOE G. RILEY, JUDGE